UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| OLD GATE PARTNERS, LLC,<br>      Plaintiff,<br><br>v.<br><br>PADDOCK ENTERPRISES, LLC,<br>      Defendant. | CIVIL CASE NO.<br>3:18-CV-01657 (JCH)<br><br><br><br><br>MARCH 26, 2024 |

**RULING ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. NO. 93)**

**I.   INTRODUCTION**

Plaintiff Old Gate Partners, LLC ("Old Gate") brings this action under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 et seq.; the Declaratory Judgment Act, 28 U.S.C. § 2201; and sections 22a-16 and 22a-452 of the Connecticut General Statutes against defendant Paddock Enterprises, LLC ("Paddock").  See Amended Complaint ("Am. Compl.") (Doc. No. 45).  Old Gate alleges that Paddock is liable for contamination of a property currently owned by Old Gate.  See id.

Before the court is the defendant's Motion for Partial Summary Judgment.  See Defendant's Motion for Partial Summary Judgment ("Def.'s Mot.") (Doc. No. 93).  The plaintiff opposes the Motion.  See Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Partial Summary Judgment ("Pl.'s Opp.").

For the reasons set forth below, the defendant's Motion for Partial Summary Judgment is denied.

1

## II.     BACKGROUND

### A.     Factual Background[1]

On May 15, 2017, Old Gate purchased a contaminated property located at 265-69 Old Gate Lane in Milford, Connecticut ("the Property").  See Plaintiff's Local Rule 56(a)2 Statement of Facts ("Pl.'s LR 56(a)2 Stmt.") ¶¶ 1, 3 (Doc. No. 99); Defendant's Local Rule 56(a)1 Statement of Facts ("Def.'s LR 56(a)1 Stmt.") ¶¶ 1, 3 (Doc. No. 95).  The Property is Old Gate's sole asset, and Old Gate does not "engage in any other activities other than holding the Property[.]"  See Plaintiff's Additional Material Facts ("Pl.'s AMF") ¶ 2 (Doc. No. 99); Defendant's Response to Plaintiff's Additional Material Facts ("Def.'s AMF Resp.") ¶ 2 (Doc. No. 103).  Old Gate seeks to "recover past and future costs for the investigation and remediation of contamination" at the Property that allegedly occurred during a period in which Owens-Illinois, Inc. ("Owens-Illinois"), of which Paddock is the successor-in-interest, operated on the Property.  See Pl.'s LR 56(a)2 Stmt. ¶ 1; Def.'s LR 56(a)1 Stmt. ¶ 1; Am Compl. ¶¶ 1, 8; Answer ¶¶ 1, 8 (Doc. No. 57); Motion to Reopen Case (Doc. No. 74).

As of the filing of the defendant's Motion on May 2, 2023, the "[i]nvestigation of the contamination at the Property" entailed (1) three phases of environmental site assessments, for a total cost of $161,500; (2) submission of an environmental condition assessment form to the Connecticut Department of Energy and Environmental Protection, for a total cost of $8,250; (3) preparation of a remedial action plan, for a total cost of $3,500; and (4) supervision of the removal of a 6,500-gallon aboveground

---

[1] The court draws primarily from the parties' Local Rule 56(a) Statements and supporting Exhibits in summarizing the material facts.  As it must, the court construes all disputed facts in the light most favorable to Old Gate, the nonmoving party.  Unless otherwise noted, the facts are undisputed.

storage tank and a 125-gallon underground storage tank, as well as soil sampling in the area of said underground tank, for a total cost of $6,635.22.  See Pl.'s LR 56(a)2 Stmt. ¶ 6; Def.'s LR 56(a)1 Stmt. ¶ 6.[2]  This investigatory work was performed by a different company, GZA GeoEnvironmental, Inc. ("GZA").  See Pl.'s LR 56(a)2 Stmt. ¶ 7; Def.'s LR 56(a)1 Stmt. ¶ 7.  The tanks were removed by a contractor named Absolute Tank Removal.  See Pl.'s LR 56(a)2 Stmt. ¶ 9; Def.'s LR 56(a)1 Stmt. ¶ 9.

The parties dispute whether any remediation of the contamination at the Property has occurred.  Paddock contends that it has not, see Def.'s LR 56(a)1 Stmt. ¶ 8, while Old Gate asserts that some remediation has occurred because, during Phases II and III of the environment site assessment, "arsenic was detected in a soil sample" and Old Gate "caused soil to be excavated from the area of [the] sample", a process that GZA oversaw, see Pl.'s LR 56(a)2 Stmt. ¶ 7.  According to Joseph Rutigliano ("Rutigliano"), the sole member, employee, and "decision-maker" for Old Gate, "no additional environmental investigatory costs or any environmental remediation costs will be spent at the Property until the completion of the litigation."  See Pl.'s LR 56(a)2 Stmt. ¶¶ 4, 12; Def.'s LR 56(a)1 Stmt. ¶¶ 4, 12; Pl.'s AMF ¶ 3; Def.'s AMF Resp. ¶ 3.

GZA has issued multiple "invoices for [the] environmental investigatory work at the Property", and these invoices—along with the related proposals and reports—were addressed to "Joseph Rutigliano" and "Old Gate Partners, LLC".  See Pl.'s LR 56(a)2 Stmt. ¶ 13; Def.'s LR 56(a)1 Stmt. ¶ 13; Pl.'s AMF ¶¶ 4-7; Def.'s AMF Resp. ¶¶ 4-7.  Each invoice was paid by Ruterra CDF, LLC ("Ruterra CDF"), which is a separate legal

---

[2] Old Gate admits to this Statement of Fact, but further asserts that "it also incurred attorneys' fees with respect to" a separate cleanup application "and related services preceding commencement of this action."  Pl.'s LR 56(a)2 Stmt. ¶ 6.

entity from Old Gate, although the two have common ownership and management.[3] See Pl.'s LR 56(a)2 Stmt. ¶¶ 13, 16, 18; Def.'s LR 56(a)1 Stmt. ¶¶ 13, 16, 18.  Absolute Tank Removal also issued invoices for the tank removal work, and those invoices were paid by Ruterra Jericho, LLC ("Ruterra Jericho"), which, like Ruterra CDF, is a separate legal entity from Old Gate, although the two share common ownership and management.  See Pl.'s LR 56(a)2 Stmt. ¶¶ 15, 19, 20; Def.'s LR 56(a)1 Stmt. ¶¶ 15, 19, 20; Defendant's Transcript of the Second Deposition of Joseph Rutigliano ("Def.'s Second Rutigliano Dep. Tr."), Def.'s Ex. 4, at 20:25-22:14, 24:18-24:25 (Doc. No. 95-4).  According to Rutigliano, he decided to have Ruterra CDF and Ruterra Jericho pay the GZA invoices for Old Gate out of "convenience."  See Defendant's Deposition of Joseph Rutigliano, Testifying as Ruterra CDF, Def.'s Ex. 11, at 17:8-18:4 (Doc. No. 95-11).

The parties dispute whether Ruterra CDF and Ruterra Jericho's payment of the invoices constituted loans that Old Gate has a legal obligation to repay.  Both parties agree that there is no written loan agreement in place between Old Gate and Ruterra CDF.  See Pl.'s LR 56(a)2 Stmt. ¶¶ 61-62; Def.'s LR 56(a)1 Stmt. ¶¶ 61-62.  However, Rutigliano has testified that, while there is no written agreement, intercompany loans were indeed made between Old Gate and Ruterra CDF and Ruterra Jericho.  See Def.'s Second Rutigliano Dep. Tr. at 198:18-211:5.  Rutigliano has also attested that he "issu[ed] checks from Coastal Distribution of Farmingdale [i.e., Ruterra CDF][4] . . . to GZA for the invoiced amounts" which "amounted to a loan from CDF to Old Gate that

---

[3] "Mr. Rutigliano owns 49% of the membership interest of Ruterra CDF and his wife, Franca Rutigliano, owns 51% of the membership interest of Ruterra CDF."  See Pl.'s LR 56(a)2 Stmt. ¶ 18; Def.'s LR 56(a)1 Stmt. ¶ 18.

[4] Coastal Distribution was the previous name of Ruterra CDF.  See Pl.'s LR 56(a)2 Stmt. ¶ 16; Def.'s LR 56(a)1 Stmt. ¶ 16.

will be repaid when Old Gate has the funds to do so." Declaration of Joseph Rutigliano, Def.'s Ex. 45, at ¶¶ 11-12 (Doc. No. 97-5); accord Custom Transaction Detail Report, Def.'s Ex. 47 (Doc. No. 97-7) (listing invoice payments made by Ruterra CDF to GZA with "Old Gate Partners (Milford)" as the "Memo" for each check).

     B.     Procedural Background

On October 4, 2018, Old Gate filed its original Complaint against the defendant, Owens-Illinois. See Complaint (Doc. No. 1). Old Gate filed an Amended Complaint, with the defendant's consent, on July 29, 2019. See Am Compl. Count One of the Amended Complaint asserts that the defendant is liable for Old Gate's response costs incurred under CERCLA. See id. at ¶¶ 13-22. Count Two seeks a declaratory judgment, pursuant to the CERCLA claim, that the defendant is liable to plaintiff "for investigation, removal, remediation and any other response costs . . . with respect to past expenditures and also future expenditures." Id. at ¶¶ 23-28. Count Three alleges violation of section 22a-16 of the Connecticut General Statutes. See id. at ¶¶ 29-33. Count Four seeks reimbursement for costs expended under section 22a-452 of the Connecticut General Statutes. See id. at ¶¶ 34-41.

On August 12, 2019, the defendant filed its Answer to plaintiff's Amended Complaint, along with its affirmative defenses and counterclaims. See Answer. The defendant's first counterclaim alleged that, to the extent it is found liable to plaintiff, it is "entitled to contribution from Plaintiff" under CERCLA, see id. at ¶¶ 27-34, while the second counterclaim asserts that defendant is also entitled to a declaratory judgment setting forth "[defendant] and [p]laintiff's respective shares, if any, for response costs incurred and to be incurred at the Property", see id. at ¶¶ 35-37.

On January 7, 2020, Paddock, in its capacity as Owens-Illinois' "successor by merger", filed a notice of defendant's pending bankruptcy petition with the court, see Suggestion of Bankruptcy (Doc. No. 71), and the case was stayed and administratively closed, see Order Staying the Case (Doc. No. 74). On July 18, 2022, Paddock moved to reopen the case and to substitute itself for Owens-Illinois as the defendant in this matter. See Motion to Reopen Case. The case was then transferred to this court, which granted the Motion to Reopen on September 30, 2022. See Order (Doc. No. 80).

On April 11, 2023, Paddock filed its Motion for Partial Summary Judgment. See Def.'s Mot. Old Gate filed its Opposition on May 2, 2023, see Pl.'s Opp., and Paddock filed its Reply on May 16, 2023, see Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment ("Def.'s Reply") (Doc. No. 102).[5]

## III.   LEGAL STANDARD

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016). If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for

---

[5] Old Gate subsequently filed its own Motion for Partial Summary Judgment on November 29, 2023, see Plaintiff's Motion for Partial Summary Judgment ("Pl.'s Mot.") (Doc. No. 149), which Paddock opposes, see Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 159). The court rules solely on Paddock's Motion in this Ruling. It will rule on Old Gate's Motion in a subsequent Ruling.

The court also notes that the parties have recently filed various Motions to Preclude, none of which are relevant to the issues raised in Paddock's Motion for Partial Summary Judgment. The court will also rule on these Motions in a subsequent Ruling.

6

trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016). Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

## IV.   DISCUSSION

Paddock moves for summary judgment on Old Gate's CERCLA and Connecticut cost recovery claims, as well as its related declaratory judgment claim, on the ground that "Old Gate has not actually incurred or expended any costs to investigate or remediate contamination" at the Property.[6] See Defendant's Memorandum of Law in Support of its Motion for Partial Summary Judgment ("Def.'s Mem."), at 1 (Doc. No. 94). Old Gate, in turn, contends that Paddock's Motion is legally incorrect and erroneously based on an overly narrowly interpretation of the term "incurred". See Pl.'s Opp. at 6-7.

---

[6] In its Memorandum, Paddock notes that it "takes no position on whether the costs at issue qualify as recoverable CERCLA response costs." Defendant's Memorandum of Law in Support of its Motion for Partial Summary Judgment ("Def.'s Mem."), at 4 (Doc. No. 94). Paddock solely moves for summary judgment on the issue of whether Old Gate has "incurred" costs within the meaning of CERCLA. As such, the court need not address, at this juncture, whether the costs at issue qualify as proper "response costs."

7

A.       Count One: CERCLA Cost Recovery

1.       Section 107(a)'s "Incurred Costs" Element Does Not Require a Plaintiff to Prove Direct Payment

Under section 107(a) of CERCLA, a private party may recover, from a potentially responsible party, the costs of responding to a release of hazardous substances. See Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid, USA, 10 F.4th 87, 99 (2d Cir. 2021) (citing 42 U.S.C. § 9607(a)).  To prevail on a CERCLA cost recovery claim, a plaintiff must show, inter alia, that it "incurred costs responding to the release or threatened release" of hazardous substances at a facility.  See B.F. Goodrich Co. v. Murtha, 958 F.2d 1192, 1198 (2d Cir. 1992).  Paddock contends that existing case law requires that "the plaintiff asserting the CERCLA cost recovery claim must have itself incurred the costs at issue" which, therefore, forecloses Old Gate's CERCLA claim because "all the environmental costs incurred to investigate contamination at the Property were spent by Old Gate's affiliate, Ruterra CDF", rather than Old Gate itself. See Def.'s Mem. at 5.  Old Gate disputes Paddock's legal analysis and argues that existing case law "confirm[s] that a party can satisfy the 'incurred cost[s]' requirement of [CERCLA] even if the cost that was incurred was paid by a related company."  See Pl.'s Opp. at 9.

The court agrees with Old Gate that a plaintiff need not necessarily prove that it has spent money to prevail on a CERCLA cost recovery claim.  The statute explicitly refers to costs that have been "incurred", rather than costs that have been "paid", "spent", or "expended".  See 42 U.S.C. § 9607(a) (providing that any person who is potentially responsible for the release of hazardous substances at a facility "shall be liable for", inter alia, "necessary costs of response incurred by any . . . person consistent

8

with the national contingency plan" (emphasis added)).  Courts inside and outside of this Circuit have held that the term "incurred" can encompass not only costs that a plaintiff has paid directly, but also costs that a plaintiff has an existing legal obligation to pay.  See, e.g., Cooper Crouse-Hinds, LLC v. City of Syracuse, 568 F. Supp. 3d 205, 232 (N.D.N.Y. 2021) (holding that a plaintiff has "incurred" costs, within the meaning of CERCLA, if it had a legal obligation pay the costs); Andres v. Town of Wheatfield, No. 1:17-cv-00377, 2020 WL 7764833 at *6 (W.D.N.Y. Dec. 30, 2020) (noting that a party may be found to have incurred a cost without having actually paid for it, provided that the plaintiff has "assumed a legal obligation to pay"); Trimble v. Asarco, Inc., 232 F.3d 946, 958 (8th Cir. 2000), abrogated on other grounds by Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546 (2005) ("We do not dispute plaintiffs' point that a party may be found to have 'incurred' a cost without having actually paid for it. . . . [A] finding that a cost has been 'incurred' may be based upon an existing legal obligation."); Wilson Rd. Dev. Corp. v. Fronabarger Concreters, Inc., 971 F. Supp. 2d 896, 909 (E.D. Mo. 2013) ("The term 'to incur' costs is not defined by CERCLA, but has been interpreted to reach beyond those who actually paid for response costs." (citing Trimble, 232 F.3d at 958)); Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement and Power Dist., 222 F. Supp. 3d 757, 765 (D. Ariz. 2016) (noting that the term "incurred" "has been interpreted to reach beyond those who actually paid for response costs" and that a court may find that a cost has been "incurred" "based on an existing legal obligation to pay, even if that existing legal obligation is later satisfied by a third party" (quoting Trimble, 232 F.3d at 958)).  Other courts, such as the Ninth Circuit, have similarly emphasized that the term "incurred", in the CERCLA context, encompasses

9

more than just expenses that a plaintiff has already paid.  See, e.g., ASARCO LLC v. Atl. Richfield Co., LLC, 975 F.3d 859, 866 (9th Cir. 2020) ("Although the meaning of 'incur' is sufficiently broad that it does not require that an expense already be paid, it is also not so broad that it encompasses future expenses that are mere potentialities." (citing Trimble, 232 F.3d at 958)).

  The court agrees with these courts.  It similarly concludes that (1) a plaintiff need not show that it has expended its own money for a court to determine that it has "incurred" costs under CERCLA, and (2) a finding that a cost has been incurred may be based on a legal obligation to pay.  This conclusion comports with the plain meaning of the word "incurred", i.e., "to become liable for or subject to[.]"  Trimble, 232 F.3d at 958 n.14; accord Morse/Diesel, Inc. v. Trinity Inds., Inc., 875 F. Supp. 165, 179 (S.D.N.Y. 1994) (noting that the terms "paid" and "incurred" are "not synonymous" and that "paid" means "[t]o give money to in return for goods or services rendered" while "incurred" means "[t]o become liable or subject to" (quoting American Heritage Dictionary 653, 911 (2d College ed. 1985)).  It also aligns well with the nature and purposes of CERCLA.  The Second Circuit has emphasized that CERCLA is a "broad remedial statute", "enacted to assure that those responsible for any damage, environmental harm, or injury from chemical poisons bear the costs of their actions."  Prisco v. A & D Carting Corp., 168 F.3d 593, 602 (2d Cir. 1999) (internal quotation marks and citations omitted). CERCLA thus "encourage[s] private parties to assume the financial responsibility of cleanup by allowing them to seek recovery from others", see W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc., 559 F.3d 85, 89 (2d Cir. 2009) (internal quotation marks and citations omitted), which, in turn, helps ensure "prompt and effective cleanup of hazardous waste

sites", see Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc., 596 F.3d 112, 120 (2d Cir. 2010).  As such, "CERCLA should be construed liberally to give effect to its purposes."  Prisco, 168 F.3d at 602 (citing Schiavone v. Pearce, 79 F.3d 248, 253 (2d Cir. 1996)).

Paddock contends that the "legal obligation to pay" standard, as articulated by the aforementioned cases, is foreclosed by binding Supreme Court and Second Circuit precedent, most notably the Supreme Court's holding in United States v. Atlantic Research Corporation, 551 U.S. 128 (2007).  See Def.'s Reply at 3-6.  The court respectfully disagrees.  In Atlantic Research, the Supreme Court examined the interplay between section 107(a), which provides parties with a right to cost recovery, and section 113(f), which grants potentially responsible parties ("PRPs") the right to seek "contribution", i.e., the "right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share", from other PRPs.  Atl. Rsch., 551 U.S. at 138 (quoting Black's Law Dictionary 353 (8th ed. 2004)).  The Court held that a PRP that "has itself incurred cleanup costs" may seek cost recovery under section 107(a), but a PRP that "reimburs[es] response costs paid by other" parties "pursuant to a legal judgment or settlement", while "eligible to seek contribution under [section] 113(f)(1) . . . cannot simultaneously seek to recover the same expenses under [section] 107(a)."  Id. at 139 & n.6.  This language, read in context, does not impose a strict requirement that a party must show that it has expended its own money in order for a court to conclude that it has "incurred" costs within the meaning of section 107(a).  It merely establishes that section 113(f), rather than section 107(a), is the proper statutory mechanism through which PRPs who have been sued may seek contribution

11

from other potentially liable parties and therefore rectify "an inequitable distribution of common liability among liable parties." See id. at 138-39.

The court thus disagrees with Paddock that the "'existing obligation to pay' rationale cannot be squared with" Atlantic Research.[7] See Def.'s Reply at 6. Indeed, as discussed above, post-Atlantic Research, multiple courts have reaffirmed that a plaintiff can be deemed to have incurred costs where it has an existing legal obligation to pay those costs. See Cooper Crouse-Hinds, 568 F. Supp. 3d at 232; Andres, 2020 WL 7764833 at *6; Wilson, 971 F. Supp. 2d at 909; Roosevelt Irrigation Dist., 222 F. Supp. 3d at 765; see also ASARCO, 975 F.3d at 866 (citing Trimble for the proposition that "the meaning of 'incur' is sufficiently broad that it does not require that an expense already be paid"). Paddock does not cite, and the court cannot locate, any case law that asserts or suggests that Atlantic Research abrogates the "existing legal obligation to pay" rationale of Trimble and its progeny.

Nor does existing Second Circuit precedent compel a different conclusion from this court. The Second Circuit has never held that a plaintiff must prove direct payment of costs to recover under CERCLA, and the cases cited by Paddock contain no such

---

[7] As Paddock notes, Atlantic Research also states that "[a] private party may recover under [section] 107(a) without any establishment of liability to a third party." Atlantic Research, 551 U.S. at 139. This statement, Paddock contends, constitutes a "reject[ion] [of] the proposition that the plaintiff must have some liability, i.e., some 'existing legal obligation,' to recover under CERCLA [section] 107, a notion that underpins Trimble's now incorrect standard." Def.'s Reply at 6.

Again, the court disagrees. The cited language in Atlantic Research merely notes, as a way of further distinguishing section 107(a) from section 113(f)—the latter of which, as a contribution provision, inherently requires liability to a third party—that a plaintiff need not be liable to a third party to prevail on a section 107(a) claim. This reasoning is consistent with Trimble and its progeny, which merely establish that "a finding that a cost has been 'incurred' may be based upon an existing legal obligation." Trimble, 232 F.3d at 958 (emphasis added). At no point did Trimble or its progeny hold that a plaintiff must establish liability to a third party to show that it has "incurred costs" under section 107(a) of CERCLA. Paddock's interpretation of this language in Atlantic Research is thus, in this court's view, incorrect.

holdings.  See Def.'s Mem. at 8.  Rather, each case simply reiterates the general principle that a plaintiff must incur costs to recover under CERCLA, and they note that this element is satisfied where a plaintiff has spent some money on response costs. See Next Millenium Realty, LLC v. Adchem Corp., 690 Fed. App'x 710, 714 & n.4 (2d Cir. 2017) (summary order) (addressing whether defendants were liable as owners under CERCLA and noting, in passing, that "Section 107(a) permits a property owner or operator who has spent money on cleaning up hazardous waste to seek reimbursement for cleanup costs from other PRPs"); Niagara, 596 F.3d at 120 (noting that "CERCLA . . . allows [parties] to seek reimbursement of their cleanup costs from" PRPs and that Section 107(a) "is available for parties that have incurred actual response costs"); Gussack Realty Co. v. Xerox Corp., 224 F.3d 85, 91-92 (2d Cir. 2000) (assessing whether plaintiff had "actually incurred any costs of response" and noting that sections 107(a) and 113 "envision that, before suing, CERCLA plaintiffs will spend some money responding to an environmental hazard" (quoting Dant & Russell, Inc v. Burlington N. R.R., 951 F.2d 246, 249-50 (9th Cir. 1991))).[8]  At no point do any of these cases state that a plaintiff must prove that it has spent money to recover under CERCLA, such that a legal obligation to pay can never satisfy the "costs incurred"

---

[8] As Old Gate notes, in stating that CERCLA "envisions that, before suing, CERCLA plaintiffs will spend some money responding to an environmental hazard", the Gussack court quoted Dant & Russell v. Burlington Northern Railroad, a Ninth Circuit case.  See Gussack, 224 F.3d at 91 (quoting Dant & Russell, 951 F.2d at 249-50).  In Dant & Russell, the Ninth Circuit held that a party cannot meet the "incurred costs" requirement with "nothing but bare assertions" that it "will perform future cleanup."  Dant & Russell, 951 F.2d at 249-50.  In reaching this holding, the Ninth Circuit explicitly stated that "[t]his case provides no occasion for defining what 'incurred' means—only what it does not mean"—i.e., that bare assertions regarding future cleanup are insufficient to meet the "incurred costs" requirement.  Id. at 250.  Thus, the court agrees with Old Gate that the quoted language in Gussack, when read in context, does not impose the strict requirement that a plaintiff must have already expended funds to prevail on a CERCLA claim.

13

element.  Indeed, none of these cases addressed the meaning or scope of the term "incurred".  Accordingly, the court agrees with Old Gate that existing Second Circuit precedent does not preclude this court from concluding that a plaintiff may satisfy the "incurred costs" element by demonstrating a legal obligation to pay.

The court therefore holds that section 107(a) does not require a plaintiff to show that it has made direct payments to meet the "incurred costs" element, and that a plaintiff may satisfy the "incurred costs" element by demonstrating an existing legal obligation to pay response costs.

### 2. A Reasonable Jury Could Find that Old Gate Has "Incurred" Costs Within the Meaning of Section 107(a)

Paddock argues that, even if a plaintiff can show that it has "incurred" costs under CERCLA by demonstrating an existing legal obligation to pay, the court must grant summary judgment in its favor because Old Gate has failed to adduce any admissible evidence that it has an existing legal obligation to pay environmental costs at the Property.  See Def.'s Mem. at 6-7.

Again, the court respectfully disagrees.  Old Gate has cited evidence in the form of numerous invoices, issued and addressed to "Joseph Rutigliano" and "Old Gate Partners, LLC", for investigatory environmental work performed at Old Gate's Property.  See, e.g., October 14, 2016 GZA Invoice, Def.'s Ex. 13 (Doc. No. 95-13); January 12, 2017 GZA Invoice, Def.'s Ex. 18 (Doc. No. 95-18).  The record also contains evidence that the work was requested by Old Gate and performed on its behalf.  See, e.g., GZA Phase II/III Environmental Site Assessment Report, Pl.'s Ex. B, at 1 (Doc. No. 99-2) (stating that GZA's Phase II/III Report was "prepared for" "Old Gate Partners, LLC"); Excerpt of GZA Phase I Environmental Site Assessment Report, Pl.'s Ex. D, at 1 (Doc.

14

No. 99-4) (same); October 14, 2016 GZA Invoice; January 12, 2017 GZA Invoice. Courts have held that such evidence is sufficient to overcome summary judgment with respect to whether a plaintiff has "incurred" costs within the meaning of CERCLA. See, e.g., Cooper Crouse-Hinds, 568 F. Supp. 3d at 232 (denying summary judgment against a defendant based on "at least one invoice directed to [p]laintiff [for response costs] . . . that it had a legal obligation to pay", even though the invoice was paid by a separate entity); Wilson, 971 F. Supp. 2d at 910 ("As explained in Trimble, plaintiffs may 'incur' costs even if another entity actually pays for those costs. The inquiry turns on who assumed a legal obligation to pay.  Invoices for environmental investigation were addressed to [the plaintiff] . . . .  These invoices demonstrate that, prior to filing suit, [the plaintiff] assumed legal obligation to pay for response costs.").

As Old Gate notes, existing case law does not appear to require a CERCLA plaintiff to prove, at the time of the litigation, that it has a continuing legal obligation to repay the entity that advanced those costs, i.e., that the plaintiff has an outstanding loan with whichever entity actually paid the costs.  Rather, it appears that courts applying the "legal obligation to pay" test generally only require that the plaintiff prove that it had a legal obligation to pay a response cost prior to the commencement of the lawsuit in order to satisfy the "incurred costs" element.  See, e.g., Cooper Crouse-Hinds, 568 F. Supp. 3d at 232; Wilson, 971 F. Supp. 2d at 910; Trimble, 232 F.3d at 957-58 (explaining that a plaintiff may meet the "existing legal obligation to pay" test where "plaintiffs themselves had hired the environmental clean up companies and, moreover, the plaintiffs were at all relevant times liable to pay those entities for their services, even

though" another entity—i.e., the plaintiffs' insurer—"made the out-of-pocket payments" (citing Quarles Petrol. Co. v. United States, 551 F.2d 1201, 1205 (Ct. Cl. 1977))).[9]

Nonetheless, even assuming arguendo that Old Gate is required to show that it is legally obligated to repay Ruterra CDF and Ruterra Jericho, Old Gate has adduced evidence sufficient to at least create a genuine issue of material fact and survive summary judgment. See, e.g., Def.'s Second Rutigliano Dep. Tr. at 198:14-198:17, 206:2-206:14 (attesting that the payments made by Ruterra CDF and Ruterra Jericho constituted loans to Old Gate); Custom Transaction Detail Report (listing the invoice payments made by Ruterra CDF to GZA annotating "Old Gate Partners (Milford)" as the "Memo" for each check).[10] Viewing the evidence in the light most favorable to Old Gate, the court concludes that a reasonable jury could find that the payments made by related

---

[9] Although Trimble refers to an "existing legal obligation to pay", it also makes clear that demonstrating an "existing legal obligation to pay" does not necessarily require the plaintiff to have, at the time of the litigation, a continuing obligation to repay the entity that paid for its response costs. In Trimble, the Eighth Circuit held that the plaintiffs could not meet the "incurred costs" requirement where (1) plaintiffs' attorneys paid for the response costs and (2) the plaintiffs' obligation to repay those costs was contingent on their success in the litigation. See Trimble, 232 F.3d at 956.

In reaching its holding, the Trimble court distinguished the facts before it from those of another case, Quarles Petroleum Company v. United States, 551 F.2d 1201 (Ct. Cl. 1977), where "the plaintiffs were at all relevant times liable to pay those entities for their services, even though the plaintiffs' insurer made the out-of-pocket payments." Id. at 957 (citing Quarles Petrol. Co. v. United States, 551 F.2d 1201, 1205 (Ct. Cl. 1977)). Based on those facts, Trimble noted, the Quarles plaintiffs demonstrated an existing legal obligation to pay sufficient to meet the "incurred costs" element of CERCLA, in contrast with the Trimble plaintiffs who had yet to incur such an obligation. See id. at 957-58.

Here, as discussed above, even though the payments were ultimately covered by other entities, GZA sent and addressed its invoices to "Joseph Rutigliano" and "Old Gate Partners, LLC" and addressed its environmental assessment reports to Old Gate. Accordingly, given the facts of this case, Old Gate's legal obligation to pay the invoices that were issued to it appears to fall within the ambit of Trimble's "existing legal obligation to pay" test.

[10] Paddock is, of course, correct that the Custom Transaction Detail Report is not itself a loan agreement and does not provide clear evidence of any contractual terms between Old Gate and Ruterra CDF. See Def.'s Mem. at 11. Nonetheless, the document constitutes admissible evidence which, combined with Rutigliano's testimony, indicates that Ruterra CDF made the payments on Old Gate's behalf and could support a jury's finding that Old Gate is obligated to repay Ruterra CDF.

companies Ruterra CDF and Ruterra Jericho constituted loans between those companies and Old Gate, even if there is no written loan agreement between the entities.

In sum, based on the evidence in the record, the court concludes that a reasonable jury could find that Old Gate has "incurred" costs within the meaning of CERCLA.[11]  The defendant's Motion for Summary Judgment as to Count One is thus denied.

### B.  Count Two: Declaratory Judgment

The defendant also moves for summary judgment as to Count Two, plaintiff's declaratory judgment claim, because "Old Gate does not have a viable CERCLA cost recovery claim" and, therefore, "cannot obtain declaratory judgment against Paddock under CERCLA."  See Def.'s Mem. at 13-14.  The court has held that Count One of plaintiff's Complaint does not fail as a matter of law.  As such, Old Gate's declaratory judgment claim remains viable.  The defendant's Motion for Summary as to Count Two is therefore denied.

### C.  Count Four: Section 22a-452 of the Connecticut General Statutes

Paddock also seeks summary judgment as to Count Four of plaintiff's Complaint, which seeks cost recovery under section 22a-452 of the Connecticut General Statutes, on the ground that "the statute requires the plaintiff to have actually expended money to

---

[11] The court emphasizes that its holding in this Ruling is limited to the issue of whether Old Gate has adduced evidence as to the "incurred costs" element sufficient to overcome Paddock's Motion for Summary Judgment.  The court will address whether Old Gate is entitled to summary judgment in its favor as to each element of its CERCLA claim, including the "incurred costs" element, when it rules on Old Gate's pending Motion for Summary Judgment.  See Pl.'s Mot.

remediate contamination and Old Gate has not done so." See Def.'s Mem. at 13-14.

Section 22a-452 provides that:

> Any person, firm, corporation or municipality which contains or removes or otherwise mitigates the effects of oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes resulting from any discharge, spillage, uncontrolled loss, seepage or filtration of such substance or material or waste shall be entitled to reimbursement from any person, firm or corporation for the reasonable costs expended for such containment, removal, or mitigation, if such oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes pollution or contamination or other emergency resulted from the negligence or other actions of such person, firm or corporation.

Conn. Gen. Stat. § 22a-452.

As discussed above, the court has concluded that Old Gate has a viable CERCLA claim. See Section IV.A, supra. Old Gate's section 22a-452 claim, in turn, relies on the same set of facts as its CERCLA claim. See Am. Compl. ¶¶ 34-41. Courts have emphasized the similarities between section 22a-452 and CERCLA, see Durham Mfg. Co. v. Merriam Mfg. Co., 294 F. Supp. 2d 251, 272 (D. Conn. 2003), and they have noted that section 22a-452, like CERCLA, is a remedial environmental statute that must be construed liberally to effectuate its purposes, see Knight v. F.L. Roberts & Co., Inc., 241 Conn. 466, 474 (1997). Given these similarities and overlapping facts, and this court's conclusion that plaintiff's CERCLA claim is viable, the court declines, at the summary judgment stage, to dismiss Old Gate's corresponding state law claim.

Nonetheless, the court is very mindful that, unlike section 107(a) of CERCLA, section 22a-452 refers to costs of remediation that have been "expended" by the plaintiff, rather than costs "incurred". See id. As Paddock correctly notes, courts have stated that, for a plaintiff to recover under the statute, "the plaintiff must have expended funds for such remediation." Durham, 294 F. Supp. 2d at 272; accord Calabrese v.

18

McHugh, 170 F. Supp. 2d 243, 260 (D. Conn. 2001) (same).[12]  This requirement comports with the plain meaning of the term "expend[ ]"—i.e., to spend money.  While Old Gate has adduced evidence that it had a legal obligation to pay—and therefore "incurred"—response costs, it is also undisputed that the funds were expended by separate entities.

Accordingly, although the court declines to dismiss Count Four at this stage, it does so without prejudice to Paddock moving for a directed verdict on this claim at trial, based on the evidence adduced and the statutory language.  The defendant's Motion for Summary Judgment as to Count Four is thus denied.

## V.     CONCLUSION

For the reasons stated above, the defendant's Motion for Partial Summary Judgment (Doc. No. 93) is denied.

**SO ORDERED.**

Dated at New Haven, Connecticut this 26th day of March 2024.

      /s/ Janet C. Hall      
Janet C. Hall
United States District Judge

---

[12] In contrast with the federal case law on CERCLA, the court cannot locate—and Old Gate does not cite—any Connecticut appellate or federal case law establishing that a plaintiff can be deemed to have "expended" costs, within the meaning of section 22a-452, by demonstrating a legal obligation to pay.